UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

JEFF RUMFOLA

VERSUS

TOTAL PETROCHEMICAL USA, INC.

CIVIL ACTION

NO. 10-CV-460-JJB

# **RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

The matter before the Court is a Motion for Summary Judgment filed by Defendant, Total Petrochemical USA ("Total") (doc. 21). Plaintiff, Jeff Rumfola ("Rumfola"), filed an opposition (doc. 25) to which Total filed a reply (doc. 26). This Court's jurisdiction exists pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1332, and 28 U.S.C. §1367.[1] Oral argument is not necessary. For the reasons stated herein, the Court DENIES Defendant's motion in part and GRANTS Defendant's motion in part.

## **Facts**

This case arises out of the alleged religious discrimination against Plaintiff for failure to show up to work on a Saturday, his Sabbath day, during a

---

[1] This case involves claims for religious discrimination under both Title VII and La. R.S. 23:332, et seq. As the Court has jurisdiction under both 28 U.S.C. 1331 and 28 U.S.C. 1332, it can exercise supplemental jurisdiction over the state claim. Louisiana's anti-discrimination statutes were modeled on federal law, and as a result, federal courts regularly use federal anti-discrimination cases when evaluating claims brought under a Louisiana discrimination law. *Deloach v. Delchamps, Inc.*, 897 F.2d 818 (5th Cir. 1990); *Hypes v. First Commerce Corp.*, 134 F.3d 721 (5th Cir. 1998). Therefore, Plaintiff's state discrimination claim will be scrutinized using cases interpreting federal statutes.

Additionally, Plaintiff's retaliation and defamation claims lay under state law. The Court exercises supplemental jurisdiction over these claims.

turnaround, at Defendant's Carville facility in April 2010.   The following facts are undisputed.

Total is a chemical manufacturer producing base chemicals and polymers which are used to make plastics. Plaintiff began working for Total at its Carville facility in August 2001. He worked as a Control Specialist, or Instrument Technician, and has the required NICET certification. In February of 2009, Rumfola began attending the Living Church of God and was baptized into the church in July 2009. One of the teachings of Living Church of God is that no secular work shall be performed on the Sabbath and that the Sabbath day is sundown Friday to sundown Saturday (doc. 25-2 at 1). Prior to his induction into the church, Rumfola's regular job schedule required him to work Monday through Friday, and he would be scheduled to work from time to time on a Saturday or Sunday. Total alleged that Rumfola knew when he was hired that he would be required to work occasional overtime on weekends, and his job description specifically required him to work overtime as a condition of employment (doc. 21-1 at 2). One such occasion is during a turnaround which will be explained below. During his October 2009 performance review Rumfola stated, "I personally would not like to work seven days in a row for the reasons of my need to rest and attend Sabbath services as the Bible commands me to do" (doc. 21-1 at 2; 25-2 at 1). During the normal week to week operation of the plant Rumfola was allowed to work enough overtime during the week such that his name was not at the top of the list for unscheduled overtime callouts on Saturday and had never

been called out on Saturday since February 2009. Rumfola also accrued vacation time that he was able to use for personal days as he saw fit, such as observing religious holidays.[2]

In April 2010, a portion of Total's production plant was scheduled to shut down and begin a turnaround. A turnaround is a process whereby an operating unit of an industrial plant is shut down and the machinery, piping systems and vessels are retooled, refurbished and/or updated. Because the plant or unit is completely shut down during this process, Total required "all hands on deck" to carry out procedures and projects, particularly focused on maintenance and proper operation of the facility (doc. 21-1 at 3). Total required all employees of affected areas whose services are needed to work twelve hour shifts, seven days a week during a turnaround. There are no exceptions to the mandatory seven day work week during turnaround except for employees who are physically unable to work due to illness (doc. 21-1 at 3). According to Total, the schedule and crew list was posted approximately two weeks in advance of the turnaround. According to Rumfola, he and Sam Christy ("Christy"), Plaintiff's direct supervisor, tried to work out an accommodation where Rumfola would be placed on nights.[3] Rumfola explained the Sabbath was from sundown Friday to sundown Saturday, and working nights would not resolve the problem (doc. 25-2 at 2). Rumfola believed Christy placed him on maintenance and not in the regular

---

[2] Plaintiff as a member of the Living church of God celebrates unique religious holidays such as Feast of Tabernacles.

[3] While Total does not outright contest this, it never acknowledges an accommodation was given to Rumfola.

3

turnaround schedule in order to accommodate his Sabbath day. Rumfola increased his hours during the turnaround to make sure he had enough hours to justify the Sabbath observance as he had in the past (doc 25-2 at 2). On Saturday morning, according to Total, Rumfola was a "no call/no show" (doc. 21-1 at 4). Christy spoke to Rumfola who indicated he was not coming in to work (doc. 21-1 at 4). Christy responded that Rumfola was assigned to work that day and was expected to be there. Rumfola refused to do so. Total alleged the company terminated Rumfola for job abandonment in light of the "no call no show" for scheduled duty.

Rumfola submitted a Charge of Discrimination with the EEOC in April 2010 and received a Notice of Right to Sue from the EEOC on October 25, 2010 (doc. 13 at 4). Plaintiff filed suit in the 18th Judicial District Court on June 21, 2010, alleging he was terminated as a result of religious discrimination in violation of Title VII of the Civil Rights Act of 1964 and in violation of Louisiana's employment discrimination law, La R.S. 23:332, et seq. Plaintiff also alleged he was retaliated against after reporting inappropriate conduct to Human Resources, and his character was defamed by Defendant when the company reported to a third party, the Department of Labor, that Plaintiff was terminated for job abandonment. Defendant removed the action to federal court (doc. 1), and filed this Motion for Summary Judgment seeking dismissal on all claims (doc. 21).

## Standard of Review

A motion for summary judgment should be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a). If the dispositive issue is one on which the nonmovant will bear the burden of proof at trial, the moving party satisfies its burden by pointing out that there is insufficient proof concerning an essential element of the nonmovant's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the issue is one in which the movant bears the burden of proof at trial, the movant must demonstrate the absence of material facts and entitlement to judgment as a matter of law. *Id.* at 321. If the movant does so, in order to survive the motion for summary judgment, the nonmovant must show that a genuine issue of material fact remains for the fact finder to resolve. *Id.* at 323. In either case, the court must construe all facts in the light most favorable to the nonmovant and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A "genuine [dispute] of material fact" exists only when a reasonable fact finder could return a verdict in the nonmovant's favor. *Id.* at 248.

## Discussion

I. **Religious Discrimination**

Under Title VII, It is unlawful to terminate, or discriminate in any other fashion, against an employee because of his religion. 42 U.S.C. §§ 2000e-

2(a)(1). All facets of religious observance and practice, including belief, are included in the term 'religion', unless an employer can show that he is unable to reasonably accommodate an employee without undue hardship to the employer's business. 42 U.S.C. §§ 2000e(j).

To establish a prima facie case of religious discrimination under Title VII, Plaintiff must show that: (1) he has a bona fide religious belief that conflicted with an employment requirement; (2) he informed the employer of that belief; and (3) he was discharged for failing to comply with the conflicting employment requirement. *Weber v Roadway Express, Inc.,* 199 F.3d 270 (5th Cir. 2000). If a prima facie case is established by an employee, the burden shifts to the employer to show either (1) that it has offered an alternative reasonable accommodation to resolve the conflict; or (2) that accommodating the employee's religious beliefs as requested would cause an undue hardship. *Bruff v. North Mississippi Health Svcs.*, 244 F.3d 495, 499-500 (5th Cir. 2001).

Turning to the instant case, neither Plaintiff nor Defendant dispute that Rumfola has met element one, a bona fide religious belief that conflicted with an employment requirement. Plaintiff as a member of the Living Church of God required him to observe sundown Friday through sundown Saturday as his Sabbath day. This conflicted with Defendant's mandatory all hands on deck, seven day a week turnaround schedule.

In regards to element two—informing employer of Plaintiff's belief—Rumfola had noted on his October 2009 employee evaluation that he would

6

prefer not to work seven days in a row order to rest and observe his Sabbath as the Bible says (doc. 21-1 at 2). Defendant argues that Rumfola never broached the possibility of an accommodation once the schedule was released. However, Defendant's employee, Christy, knew enough to ask Rumfola if he would like to switch to nights before the schedule was released. Plaintiff informed Christy that this was unacceptable. Because of this alleged attempt, notification that it was insufficient, and Plaintiff's 2009 October evaluation, the Court finds Defendant employer was informed of Plaintiff's belief, satisfying element two.

Element three required Plaintiff to have been discharged from Total for a failure to comply with the conflicting employment requirement. In April 2010, Plaintiff was scheduled to work as part of Total's "all hands on deck" policy for turnaround requiring mandatory attendance except for illness. Rumfola's Sabbath, sundown on Friday to sundown on Saturday, conflicted with this turnaround schedule. Plaintiff did not show up to work on the first Saturday of turnaround. Despite the parties' arguments, element three only requires Plaintiff to have been discharged for failing to satisfy a conflicting employment requirement. In the instant case, the conflicting employment requirement is Plaintiff's Saturday shift during turnaround. This requirement did not allow Plaintiff to observe his Sabbath from sundown Friday to sundown Saturday. Rumfola did not show up and failed to meet this conflicting employment obligation. He was subsequently fired for his absence. Thus, the Court finds element three and Plaintiff's prima facie case is met.

7

Once a prima facie case is established, the burden now shifts to Defendant to establish (1) that it has offered an alternative reasonable accommodation to resolve the conflict; or (2) that accommodating the employee's religious beliefs as requested would cause an undue hardship. *Bruff*, 244 F.3d at 499-500.

A reasonable accommodation as a matter of law is not defined in 42 U.S.C. §2000e(j) and courts have analyzed different accommodations by looking at the facts on a case-by-case basis. Plaintiff believes Christy was trying to accommodate Plaintiff's beliefs when he offered Rumfola to switch to nights. Defendant fails to deny this accommodation was given. As to this first attempt at accommodation, it is unreasonable on its face because Plaintiff's Sabbath is sundown Friday to sundown Saturday. Plaintiff cannot work at all during this period, which he indicated to Christy. Even if this may have been an offer for accommodation, Defendant still alleges no reasonable accommodation existed as a matter of law. Therefore, the Court the finds no reasonable accommodation was offered.

If no reasonable accommodation is offered, the Defendant must prove an undue hardship to defeat the claim of religious discrimination. Undue hardship exists as a matter of law when an employer incurs anything more than a *de minimis* cost to reasonably accommodate an employee's religious beliefs. *Trans World Airlines v. Hardison*, 432 U.S. 63 (1977). As Title VII also does not define the term in 42 U.S.C. 2000e(j), undue hardship as a matter of law is based on the factual circumstances of each case. *Balint v. Carson City, Nev.*, 180 F.3d. 1047

(10th Cir. 1976). The parties do not point to, and the Court cannot find on its own, a standard for judging *de minimis*.[4] The case law varies as discussed below.

A case with a very similar fact pattern is *EEOC v. Universal Manufacturing Corp.*, 914 F.2d 71 (5th Cir. 1990). In that case an employee, Mary Parker, wanted seven days unpaid to leave to attend a religious festival. Her church required its members to both attend the festival and refrain from working during the seven day period. *Id.* at 72. Because work rules required only up to five days off for personal reasons, Universal denied her request and offered her two choices—(1) five working days off or (2) seven days off if she worked one shift within that seven days. *Id.* Parker informed her employer that she would take the seven days off but would not work a shift during the seven days. *Id.* When she did not report for work, Parker was fired. *Id.* The Fifth Circuit determined the district court did not properly conclude that, as a matter of law, the choices offered to Parker were acceptable because Universal made no attempt to accommodate Parker's second conflict—complete forbearance from work during the festival week—even though the first conflict—attendance at the festival—had a reasonable accommodation. *Id.* at 73. Even though the court concentrated on the reasonability of accommodation, both reasonable accommodation and undue hardship were considered questions of fact by the court. *Id.* at 74. Therefore the

---

[4] The Court was able to find one jury instruction defining *de minimis* as "insignificant." *Ford v. City of Dallas*, 2005 U.S. Dist. Ct. Jury Instr. 1676 (N.D. Tex. 2007).

court reversed and remanded the district court's finding of a reasonable accommodation as a matter of law. *Id.* at 74, 72.

In *Bruff v. North Mississippi Health Services*, the Fifth Circuit stated that a motion for summary judgment should be denied if substantial evidence of such quality and weight that reasonable men in the exercise of impartial judgment might reach different conclusion. 244 F.3d at 499 (5th Cir. 2001). The hospital maintained that to retain the employee as a counselor in the Employee Assistance Program (EAP) would have constituted an undue hardship under the *Trans world Airlines de minimis* standard.[5] *Id.* at 500. The hospital argues that it would incur more than a *de minimis* cost because Bruff resolved not to perform some aspects of her position and refused to counsel employees on their homosexual or extramarital relationships. *Id.* In order to afford employees with homosexual or extramarital relationships the benefit of counseling, all of the cases would have to be shifted to the other two counselors in the EAP. *Id.* Bruff knew that counseling employees for these types of relationships would come up in her job duties when she was applying for the job. She merely assumed she could refer the patients to other counselors and never spoke with her interviewer about the potential conflicts or accommodations that could have resolved the conflict. *Id.* Additionally, in the case, the court says the hospital is not required to actually incur the costs before asserting they are more than *de minimis* and that

---

[5] Undue hardship exists as a matter of law when an employer incurs anything more than a *de minimis* cost to reasonably accommodate an employee's religious beliefs. *Trans World Airlines v. Hardison*, 432 U.S. 63 (1977)

the mere possibility of an adverse impact, i.e. a disproportionate workload, is sufficient to constitute an undue hardship. *Id.* at 501.

Defendant relies heavily on *George v. Home Depot* and *Trans World Airlines* throughout its argument. *George v. Home Depot*, 2001 WL 1558315 (E.D. La. 2001); *Trans World Airlines Inc. v. Hardison*, 432 U.S. 63 (1977). In *George*, the plaintiff was offered by Home Depot to permanently change her schedule to only work on Sunday afternoons in order to accommodate her religious beliefs. This was not sufficient for the plaintiff who wanted the entire Sunday off every weekend because she visited with the elderly and participated in church groups after worship services. The trial court ruled in favor of Home Depot, stating that allowing employees to decide which days they will work is not a reasonable accommodation and reasonable accommodations do not need to be only on the employee's terms. *Id.* at 8.

*Trans World Airlines* was a Supreme Court case in which a plaintiff wanted a four day work week. The employee was essential personnel who was the only person available and able to perform the duties on the shift, and leaving the position empty would impair critical functions to airline operations. The plaintiff tried to work on an accommodation with his union but because he transferred positions, plaintiff did not have enough seniority to pick his preferred schedule. Defendant cites the case for the proposition that to give the plaintiff Saturdays off, the employer would have to deprive another employee of his shift preference because he did not have a religious belief that observed Saturday Sabbaths. The

11

Court concluded, "[W]e will not readily construe the statute to require an employer to discriminate against some employees in order to enable others to observe their Sabbath." *Id.* at 85.

Both *George* and *Trans World Airlines* are distinguishable. First, in *Bruff* the employee did not ever want to work with homosexual or extramarital relationship issues and needed a permanent accommodation. Rumfola, on the other hand, only needed accommodation for his Sabbath day, sundown Friday to sundown Saturday, during the turnaround schedule. Defendant would have this Court believe that turnarounds were essentially perpetual requiring a permanent accommodation for Plaintiff. However, Total does not show whether or not Plaintiff was needed to help on all of the plant's turnarounds or on just a particular unit's turnaround. The facts also simply do not show how long this particular turnaround was and therefore how many days Plaintiff needed to be accommodated. Therefore the court cannot determine if this would have been more than a *de minimis* cost to the employer. However, one day a year does not equal *de minimis*.

Secondly, in *Bruff* the size of the staff was very small and only two other counselors could have handled the cases Bruff did not want to address. Bruff's job required traveling to patients, and one of the other counselors would have had to travel with her on every call out in case a conflict with Bruff's religious beliefs presented itself. This would have been a major cost in resources and employee time to the hospital. It is unclear in the instant case how many

12

employees were able to do Rumfola's job. Total merely asserts that it meets a *de minimus* standard due to decreased efficiency of workplace operations; increased duties to other employees or increased cost to hire another employee to cover his shift; and lower workplace morale. However, Total does not, in fact, present any actual evidence beyond an affidavit from one of its own employees to demonstrate these costs (doc. 21-7 at 3). While it is true that according to *Bruff*, a company does not have to actually incur injury for the harm to be *de minimis*, this Court takes note that Defendant does not produce any evidence beyond testimony of its own employees that a *de minimis* cost occurred to their company. It is also not clear whether or not the Defendant actually suffered a hardship because Defendant did not even replace Rumfola once he was terminated. In the words of Total employee, Sam Christy, "[We] didn't have to have anyone else because the manpower worked out." (Doc. 25-7 at 4).

*George* and *Trans World Airlines* are also distinguished from the instant case by the accommodation itself. First, both *George* and *Trans World Airlines* involved situations in which an employee is requesting a permanent accommodation. In the instant case, Plaintiff is only requesting a temporary accommodation for his Sabbath during turnaround, as previously stated, as Plaintiff is able to meet his religious needs through the ordinary plant practice of working overtime during the week. Secondly, in *Trans World Airlines*, the plaintiff was previously able to receive his preferred four day a week schedule because of his seniority status. It was only when he transferred positions and lost his

seniority status that the plaintiff incurred a problem. The Court's statement about discriminating against one employer to the detriment of another is because of this seniority system. Necessarily, an employee with higher seniority than the plaintiff would have been discriminated against and would not have been able to have his preferred schedule if the plaintiff was accommodated for his religious preference. In the instant case, there is no seniority system described by either Plaintiff or Defendant in the evidence given. No employee would have been discriminated against by allowing a religious accommodation to supersede their seniority when assigning schedules. In fact, according to Defendant, if all employees were required to work during turnaround except in the event of illness, then seniority is not even a factor in turnaround scheduling, and *Trans World Airlines* does not apply.

Because there is substantial evidence that would allow reasonable men with impartial judgment to reach different conclusions[6], the Court finds whether or not an undue hardship existed is a question of fact for the fact finder.

Because the Court finds (1) Plaintiff has established his prima facie case; (2) a reasonable accommodation was not offered; and (3) there is a genuine dispute of material fact as to whether or not the *de minimis* standard for an undue hardship exists and is a question of fact for the jury, the Court DENIES the motion for summary judgment on the claim of religious discrimination.

---

[6] *Supra*, note 3.

## II. Retaliation Claim

Plaintiff's amended complaint only alleges that he was retaliated against for reporting a co-worker for making derogatory comments in early 2009. (Doc. 13 at 3). Plaintiff was subsequently written up for reporting this behavior. (Doc. 25-2 at 16). It is unclear whether Plaintiff is talking about two separate retaliations for his religious beliefs—(1) the write up for reporting another employee for name calling or (2) his termination for not showing up for his shift in order to observe his Sabbath—or if he is merely claiming only the latter instance of retaliation. First, Plaintiff's retaliation claim in regards to his termination for not showing up to work on the Sabbath is subsumed in his religious discrimination claim. In regards to the first retaliation claim, Defendant argues Plaintiff's claims are outside the scope of his Charge of Discrimination with the EEOC. Indeed, Plaintiff does not discuss retaliation for the write up on his EEOC Intake Questionnaire (doc. 25-10 at 7). Plaintiff only discusses retaliation of termination or discharge. As the Court finds Plaintiff cannot make a prima facie showing of retaliation, the Court does not reach the issue as when it is properly before it. opportunity

Assuming *arguendo* Plaintiff's charge that the write up for reporting his religious beliefs was retaliatory, he still does not meet the elements of a retaliation claim. It is unclear whether or not reporting a co-worker is a protected activity under Title VII, and Plaintiff does not provide argument or case law to show the Court this is indeed a protected activity. Plaintiff also does not produce enough evidence to show a causal connection existed between reporting the

15

employee, Rumfola's write up, and his religious beliefs. Rumfola also argued with the employee after the employee stated his derogatory remarks (doc. 25-2 at 15, doc. 21-7 at3). This argument could have been the reason for Plaintiff's write up rather than his religious beliefs, and Plaintiff does not put on evidence to show why he was written up beyond his own deposition testimony. For these reasons, there is no genuine dispute as to Plaintiff's retaliation claim.

Because Plaintiff's termination/discharge retaliation claim is subsumed in his religious discrimination case and because Plaintiff's claim that he was written up in retaliation for his religious claim does not meet the elements for retaliation, the Court GRANTS the motion for summary judgment on this claim.

### III. Defamation Claim

In *Costello v. Hardy*, the Louisiana Supreme Court listed the four elements necessary to establish a claim of defamation, "(1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury." *Costello v. Hardy*, 864 So.2d 129, 139 (La. 2004). The court also noted fault is often indicated by malice or other fault in the jurisprudence. Thus, for a plaintiff to be successful on a defamation claim, he must prove "'that the defendant, with actual malice or other fault, published a false statement with defamatory words which caused plaintiff damages.'" *Id*. at 139-40, citing *Trentecosta v. Beck*, 703 So.2d 552, 559 (La. 1997). According to *Fitzgerald v. Tucker*, a statement is defamatory, "if it tends to harm the reputation of another so as to lower the

16

person in the estimation of the community, to deter others from associating or dealing with the person, or otherwise exposes a person to contempt or ridicule." *Fitzgerald v. Tucker*, 737 So.2d 706, 716 (La. 1999). If all elements of the claim are not met and even one element is absent, the claim fails. *Id.* at 140. Defenses to a defamation action include truth, justification, and privilege. *Costello*, 864 So.2d at 143.

A qualified privilege is present when a defamatory statement is made "(1) in good faith, "(2) on a matter in which the person making the communication has an interest or with regard to which he has a duty, or (3) to a person with a corresponding interest or duty." *Usner v. Strobach*, 591 So.2d 713 (La. 1st Cir. 1991). When a party has reasonable grounds to believe the statement to be true, good faith exists. *Id.* In the instant case, Total had a duty, and therefore a qualified privilege, to report Plaintiff's termination and the circumstances involved to the state through the Office of Employment Services (OES). Plaintiff does not meet element two of an unprivileged publication. Thus, Rumfola's defamation claim must fail.

Assuming, *arguendo*, the publication was not privileged, Plaintiff still would not be able to establish a valid claim. First, Plaintiff produces no evidence to show actual malice in Defendant's reporting of "job abandonment" to OES. Total terminated Rumfola for being no call/no show to a shift. And while the term job abandonment might in fact be vindictive, Rumfola points to no evidence in the record that this is so. Additionally, Plaintiff's evidence of reduced salary to show

17

injury does not satisfy the element because Rumfola does not point to evidence—beyond his own conclusory allegation—that he could not get a comparable job due to Total's listing his termination as "job abandonment." Thus, Plaintiff cannot establish a resulting injury because of Defendant's filing and does not meet element four.

Because Plaintiff cannot establish every element necessary to prevail on his defamation claim and Defendant enjoys a privilege defense, the court GRANTS summary judgment on this claim.

## CONCLUSION

Accordingly, the Court GRANTS Total's motion for summary judgment for the retaliation and defamation claims (doc. 21) but DENIES the motion for summary judgment for the religious discrimination claim (doc. 21).

Signed in Baton Rouge, Louisiana, on March 13, 2012.

_____
**JUDGE JAMES J. BRADY
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**